HOOD, Judge.
This is a mandamus suit instituted by Bob Smith against the City of Oakdale, in which plaintiff seeks to compel defendant to appoint him as Chief of Police of that city. Judgment was rendered by the trial court in favor of plaintiff. Defendant appealed.
The issues presented are (1) whether plaintiff was properly “certified” by the Oakdale Civil Service Board as being eligible for appointment as Chief of Police of the defendant city; and (2) whether this mandamus suit is premature or is an appropriate procedure for the relief sought by plaintiff.
The City of Oakdale was chartered under the Lawrason Act, and is governed by a mayor and five aldermen. It has a population of between 7,000 and 13,000. The appointment of the Chief of Police of that city is governed by “Fire and Police Civil Service Law For Small Municipalities And For Parishes and Fire Protection Districts.” LSA-R.S. 33:2531, et seq.
A vacancy occurred in the office of Chief of Police of the above city in 1974. On June 10, 1975, a promotional examination was administered by the Fire and Police Civil Service Board for the City of Oakdale to determine the eligibility of applicants for appointment to fill that vacancy. Examinations also were administered on that date to determine the eligibility of applicants for appointment to other positions. Three persons, including plaintiff Smith, filed applications and took the examination for eligibility to be appointed as Chief of Police. Two of them failed the test, but plaintiff was successful in passing it. No other applicant has passed the examination to determine eligibility for appointment as Chief of Police since that time..
The Mayor and Board of Aldermen of the City of Oakdale were informed in some manner that plaintiff had successfully passed the civil service examination to determine his eligibility for appointment to the position he now seeks, but the defendant city nevertheless refused to appoint plaintiff as its Chief of Police.
Smith instituted this suit on September 27, 1976. He contends that he is the only person who was certified by the Civil Service Board as being eligible for appointment to fill the above vacancy, and that it is the mandatory duty of the city to appoint him as its Chief of Police.
Defendant filed an exception of prematurity alleging that plaintiff had failed to exhaust his administrative remedies prior to filing suit. That exception was referred to the merits. Defendant then answered, denying that it was required by the applicable Civil Service laws to appoint Smith as its Chief of Police.
After trial, judgment was rendered by the trial court in favor of plaintiff, ordering defendant “to immediately appoint Bob *457 Smith Chief of Police of the City of Oak-dale, Louisiana.” Defendant appealed.
Applicable here is LSA-R.S. 33:2554, the pertinent parts of which provide:
“A. Whenever the appointing authority proposes to fill a vacancy in the classified service, except by demotion, transfer, emergency appointment, or by substitute employment not to exceed thirty days, he shall request the board to certify names of persons eligible for appointment to the vacant position. The board thereupon shall certify in writing the names of eligible persons from the appropriate employment list as provided below.
[[Image here]]
“D. Certification and appointment from the competitive list shall be limited to those conditions and classifications for which the competitive test may be given as provided by R.S. 33:2552(5). Upon the appointing authority’s request for the certification of eligible persons from which it may fill a vacancy, and if the competitive list is the appropriate list from which the names of eligible persons shall be certified, the board shall certify the names of the persons upon that list, in the order in which they appear thereon, for the class in which the vacancy is to be filled. The appointing authority shall select and appoint to the first vacancy to be filled any one of the persons so certified to it for the vacancy. If any one or more persons so certified refuses the appointment, the appointing authority then shall select and appoint any one of the remaining persons certified by the board. This procedure shall be followed until the position has been filled by appointment of one of the persons certified from the list and willing to accept the appointment, or until each person whose name appears upon the list has in this manner been certified for the vacancy.
[[Image here]]
“G. It shall be mandatory for the appointing authority to fill each vacancy, including vacancies in classifications hereafter created, within 60 days of the occurrence of the vacancy. This shall not operate to prevent the board from abolishing any unnecessary classifications.”
(Emphasis added).
The defendant city contends that it is not required, and thus it cannot be compelled by mandamus, to appoint plaintiff as its Chief of Police, because the Civil Service Board has never certified “in writing” that Smith is eligible for such an appointment.
As noted above, LSA-R.S. 33:2554(A) provides that the Civil Service Board “shall certify in writing” the names of eligible persons. LSA-R.S. 33:2554(D) provides that the appointing authority shall select and appoint to the first vacancy to be filled any one of the persons “so certified" to it for the vacancy. The use of the word “shall” in both of the cited sub-sections of LSA-R.S. 33:2554 makes it mandatory, we think, that the Civil Service Board certify in writing the names of eligible persons, and that the appointments be made only from that list of certified names.
We conclude that the Civil Service Board is required by LSA-R.S. 33:2554 to certify in writing the names of the persons it finds to be eligible for appointment, and that the appointing authority is required to select or appoint to fill the vacancy only a person who has been so certified in writing. We do not believe that the appointing authority can be compelled to appoint a specific person to fill a vacancy under that section of the Revised Statutes unless the Civil Service Board has certified in writing the name of that person as being eligible to fill the vacancy.
A factual issue is presented in the instant suit as to whether the Oakdale Civil Service Board certified in writing the name of plaintiff Smith as being eligible for appointment as Chief of Police.
Troy Foyil, the present City Clerk of Oakdale, was serving as City Clerk and as a member of the Board of Aldermen at the time the above civil service examinations were administered. He testified that he “knew about the test,” and that he was “advised” that “there was an applicant certified for Chief of Police.” That informa *458 tion obviously was given to him orally, because he stated that it was “not in writing” and that he was never “formally advised by the Civil Service Board.” He stated that he wrote to the Civil Service Board at least twice requesting that it send him a list of the people who had passed civil service examinations for various jobs, but that he never received any such list. He concedes that the Mayor, or the Public Service Director or the Acting Police Chief, could have received such a list without his knowledge, but that he does not know that they were ever advised by the Civil Service Board that Smith was eligible for the above appointment. We gather from the evidence that Foyil gave that information orally to the Mayor and to the other Aldermen, because he said they “talked about it” at a meeting.
Bobby Gordon, a Sergeant in the Oakdale Police Department, was Chairman of the Fire and Police Civil Service Board of that city at the time the above civil service examinations were administered. He testified that the Civil Service Board “approved the grades” which were made on the examinations, including the passing grade made by plaintiff Smith, and that “the Secretary (of the Civil Service Board) is supposed to send a copy of the grades to the City Clerk.” He assumed that the secretary had sent a copy to the City Clerk in this instance, but he stated that he does not know whether that was done. His testimony, in part, is “the secretary is supposed to have done it. Now, whether she did, I don’t know.” The City Clerk, Foyil, testified that he never received a “copy of the grades” or a written document of any kind from the Civil Service Board. Neither Gordon, nor anyone else, suggested that a “copy of the grades” or a list of the names of eligible persons had been sent to the Mayor, or to any city official other than the City Clerk, or that it was customary to do so.
No testimony, other than that of Foyil and Gordon, was presented on the issue of whether the Civil Service Board certified in writing to defendant that plaintiff was eligible for appointment as Chief of Police. The evidence shows that most of the personnel of the Civil Service Board changed after the above tests were administered, and that the person who was serving as secretary to the Board at that time no longer holds that position. Neither the former secretary nor any other employee of the Board testified at the trial. No list of eligible persons, no certificate, and no other written document of any kind tending to show that plaintiff had passed the civil service examination or that he was eligible for the appointment he seeks, was introduced in evidence, and no one testified specifically that any such writing ever existed.
Plaintiff Smith, the appellee, has made no appearance in this court, and no brief has been filed in his behalf in connection with this appeal.
The trial judge found that plaintiff had been “duly certified” by the Oakdale Civil Service Board as qualified to fill the position of Chief of Police of that city, and he held that “the City cannot arbitrarily leave vacant an office such as Chief of Police when there is a qualified and certified applicant for that office.” We are unable to determine from the trial judge’s reasons for judgment whether he made a factual finding that the Civil Service Board certified “in writing” the names of the persons who were eligible for the appointment, or whether he concluded as a matter of law that Smith had been “duly certified” because the same procedure of administering examinations and reporting the results of them was followed here as had been followed in other instances.
The evidence convinces us that the Oak-dale Civil Service Board did not “certify in writing” to the defendant city that plaintiff was eligible for appointment as Chief of Police. The Board did not send or furnish to the city, or to any official of that municipality, a list of eligible persons or a writing of any kind tending to inform defendant that Smith had successfully passed the civil service examination or that he was eligible for appointment to fill the above vacancy.
We conclude that the defendant city cannot be compelled to appoint plaintiff as its *459 Chief of Police, since the Oakdale Civil Service Board has never certified in writing the name of plaintiff Smith as being eligible for that appointment. The trial judge erred, therefore, in ordering defendant to appoint plaintiff as Chief of Police of that city, md the judgment appealed from thus must be reversed.
In view of the above conclusion, it is unnecessary for us to consider the additional defenses urged by the city. We express no opinion, therefore, as to (a) whether a “copy of the grades” made by applicants who took the civil service examination would have constituted an adequate certification in writing of the names of eligible persons; (b) whether the city can be compelled to appoint the only person certified as being eligible to fill the vacancy, despite the city’s allegations that that person lacks fitness, efficiency, merit and suitability for the position; (c) whether the appointing authority may elect not to fill the vacancy at all; or (d) whether this mandamus suit was prematurely filed or whether it is the proper procedure for the relief sought by plaintiff.
For the reasons assigned, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendant, City of Oakdale, and against plaintiff, Bob Smith, rejecting plaintiff’s demands and dismissing this action. All costs of this suit, including those incurred in the trial court and on appeal, are assessed to plaintiff-ap-pellee.
REVERSED AND RENDERED.
FORET, J., concurs in the result.